UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-21313-CIV-WILLIAMS/SIMONTON

JUVY VARGAS PEREZ,

    Plaintiff,
vs.

ROYAL CARIBBEAN CRUISES LTD.,

    Defendant.
_____/

## ORDER

**THIS MATTER** is before the Court on Defendant Royal Caribbean Cruises Ltd.'s motion to compel arbitration and dismiss for improper venue (DE 8). Plaintiff Juvy Vargas Perez responded (DE 16[1]), Royal replied (DE 21), and also supplemented the record with copies of signed documents (DE 22,[2] 24) and subsequently decided authority (DE 25, 26, 27).

## I.  BACKGROUND

Perez, a Philippine citizen, entered into an individual contract of employment "for and on behalf of Royal Caribbean Cruises Ltd."[3] on April 7, 2010. (DE 8, Def.'s Mot. to Compel Arbitration at 1; DE 8-1, Philippine Overseas Employment Administration Contract of Employment, the "POEA Contract"). Also on April 7, 2010, Perez signed a

---

[1] Perez's Motion for Leave to File Surreply (DE 23) is **GRANTED** and the Court has considered her submission.

[2] Perez disputed that the document filed at DE 22 bore her signature and asserted that the document had, in fact, been signed by her non-party husband, who is also a Royal Caribbean employee. (DE 23-1). However, filing of this first document seems to have been a clerical error and the document filed at DE 24 bears a signature that appears identical to Juvy Vargas Perez's signature on her affidavit. (*Compare* DE 24-1 at 6 *with* DE 23-1 at 1).

[3] The POEA Contract provides that "Royal Caribbean Cruises Ltd. . . . is hereinafter referred to as Employer." (DE 24-1).

copy of the Standard Terms and Conditions Governing The Overseas Employment of Filipino Seafarers On-Board Ocean-Going Ships ("Standard Terms"). (DE 24-1). Both of these documents contain signature blocks for a "Seafarer" and an "Employer." (*Id.*; DE 8-1). Both documents show a signature on behalf of Employer and the signature of Plaintiff Juvy Vargas Perez as the Seafarer. (*Id.*).

Perez alleges that, during her employment with Royal and after the execution of the POEA Contract and the Standard Terms, she was underpaid and she suffered injuries from repeatedly lifting unreasonably heavy loads. (DE 1-3 ¶¶ 9, 16). Perez's complaint, filed in Florida circuit court, alleges Jones Act negligence, unseaworthiness, failure to provide maintenance and cure, wages and penalties under the Seaman's Wage Act, breach of the covenant of good faith and fair dealing, and violations of title 18 U.S.C. chapter 77, which prohibits, among other things, peonage, slavery, forced labor, and trafficking in persons. (DE 1-3). On April 14, 2014, Royal timely removed the case to this Court pursuant to title 28 U.S.C. sections 1441, 1446 and title 9 U.S.C. section 205. (DE 1, Notice of Removal at 1, 6).

Royal requests that the Court compel arbitration in this matter pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), and its implementing legislation, title 9 U.S.C. sections 201-208. (DE 8 at 1); Convention art. I, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3. Royal also requests that the Court dismiss this matter for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). (DE 8 at 1). The dispositive issue before the Court is whether there is an agreement in writing containing an arbitration provision.[4]

---

[4] Perez concedes that the other three jurisdictional prerequisites to compelling arbitration under the Convention are not at issue in this case. (DE 16 at 4 n.4); *Bautista v. Star Cruises,* 396 F.3d 1289, 1294

Royal contends that the POEA Contract incorporated the Standard Terms,[5] and that the Standard Terms included an agreement to arbitrate disputes in the Philippines. (DE 8 at 2, 5). Section 29 of the Standard Terms states in part:

> In cases claims and disputes arising from this employment, the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of voluntary arbitrators. . . . If there is no provision as to the voluntary arbitrators to be appointed by the parties, the same shall be appointed from the accredited voluntary arbitrators of the National Conciliation and Mediation Board of the [Philippines] Department of Labor and Employment.

(DE 8-3 at 18). In her response, Perez disputes the existence of an arbitration agreement between the Parties. (DE 16 at 3). Perez also argues that federal law bars arbitration agreements in seamen's contracts and that the arbitration provision is void as against public policy. (*Id.* at 17, 19).

## II. ANALYSIS

The Convention governs the recognition and enforcement of arbitration agreements made in signatory nations. The United States is a signatory to the Convention, as is the Philippines. *See Bautista v. Star Cruises*, 396 F.3d 1289, 1294 n.7 (11th Cir. 2005) *aff'g* 286 F. Supp. 2d 1352 (S.D. Fla. 2003) (Seitz, J.). In deciding a motion to compel arbitration under the Convention, "a court conducts 'a very limited inquiry.'" *Id.* at 1294 (citation omitted). An arbitration agreement is governed by the Convention if (1) the four jurisdictional prerequisites are met, and (2) none of the Convention's affirmative defenses applies. *Id.* at 1294-95. The prerequisites are that:

---

(11th Cir. 2005) (articulating four jurisdictional prerequisites).

[5] It appears that two versions of the Standard Terms have been presented to the Court in this case; one predating the 2010 amendments and one incorporating those amendments. (*Compare* DE 8-3 *with* DE 24-1). The pertinent provisions of the Standard Terms are not materially different, however.

> (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Id.* at 1294 n.7. Here, Perez has challenged only the first jurisdictional prerequisite and asserts a public policy defense. (DE 16 at 4, 19). In analyzing the issue presented, the Court is "mindful that the Convention Act generally establishes a strong presumption in favor of arbitration of international commercial disputes." *Bautista*, 396 F.3d at 1295; *Quiroz v. MSC Mediterranean Shipping Co. S.A.*, 522 F. App'x 655, 661 (11th Cir. 2013) (same).

## A. There Is An Agreement In Writing To Arbitrate The Dispute

Under the Convention, "an agreement in writing" includes "an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." Convention, art. II(2); 9 U.S.C. § 2; *Quiroz v. MSC Mediterranean Shipping Co. S.A.*, 522 F. App'x 655, 661 (11th Cir. 2013). Perez argues that there was no binding arbitration agreement between her and Royal because the POEA Contract did not explicitly incorporate the Standard Terms and because prior Eleventh Circuit cases compelling arbitration had involved plaintiffs whose contracts "actually contained arbitration clauses," or who had "actually signed the Seafarer 'Standard Terms.'" (DE 16 at 10). At first blush, Perez's argument has some resonance and courts of this district have considered precisely the arguments and distinguishing facts raised by Perez when determining whether the writing requirement was satisfied. (DE 16 at 4); *see Hodgson v. Royal Caribbean Cruises, Ltd.*, 706 F. Supp. 2d 1248, 1255 (S.D. Fla. 2009) (collecting cases and compelling arbitration);

see also *Navarette v. Silversea Cruises, Ltd., et al.*, Case No. 14-cv-20593 (S.D. Fla. June 24, 2014) (Huck, J.) (reviewing a POEA contract and the Standard Terms, finding incorporation, and compelling arbitration). But the district and appellate court opinions in *Bautista* are most relevant here and militate against Perez's position.

In the district court's thorough opinion in *Bautista v. Star Cruises*, 286 F. Supp. 2d 1352 (S.D. Fla. 2003), Judge Seitz considered precisely the same issue regarding incorporation of arbitration terms raised by Perez. *See id.* at 1357. But for minor differences not material to this discussion, Judge Seitz considered the exact form documents and terms that the Court interprets here:

> Plaintiffs' employment contracts, identical in form but varying based on the particular position attained, consist of one page that sets forth the basic terms and conditions of the seaman's employment, including the duration of the contract, the position accepted, and the monthly salary and hours of work. Paragraph 2 of the standard contract states that its terms and conditions are to be observed in accordance with Department Order No. 4 and Memorandum Circular No. 9, promulgated by the DOLE[6] and the POEA in 2000. Department Order No. 4, in turn, incorporates the Standard Terms and Conditions Governing the Employment of Filipino Seafarers On Board Ocean–Going Vessels ("Standard Terms").

*Id.* Even more important than Judge Seitz's thoughtful and persuasive treatment of the issue, the Eleventh Circuit's analysis of the contract language in *Bautista* controls. *Bautista*, 396 F.3d at 1293, 1303. Like the district court, the Eleventh Circuit in *Bautista* concluded that the POEA Contract incorporated an arbitration provision. *Id.* Section 29 of the Standard Terms, quoted above, is nearly identical to the arbitration language considered by *Bautista*. *See Bautista*, 396 F.3d at 1293, 1303. Thus, Perez's incorporation argument fails.

Perez's signature argument is easily dispatched as well. On April 7, 2010,

---

[6] Department of Labor and Employment of the Republic of Philippines.

Perez signed two documents relevant to the instant motion: 1) the POEA Contract and 2) the Standard Terms. (DE 8-1, DE 24-1). Perez urges the Court not to follow the precedent cited above because, as she argues in her brief, the fact that she did not actually sign the Standard Terms distinguishes her case. It is true that the Standard Terms submitted with the motion to compel were unsigned. But on August 18, 2014, Royal produced a copy of the Standard Terms signed by Perez.[7] (DE 24, Def.'s Second Notice of Filing Supplemental Evidence in Further Supp. of its Mot. to Compel Arbitration, Ex. A).

In response, Perez relies heavily on a non-binding case from the Eastern District of Louisiana, *Baricuatro v. Indus. Pers. & Mgmt. Services, Inc.*, 927 F. Supp. 2d 348, 360 (E.D. La. 2013). *Baricuatro* turned on whether or not the seafarer plaintiffs had signed the Standard Terms. *Id.* at 360. In that case, those that had signed were compelled to arbitrate. *Id.* at 372. Consequently, because Perez signed the Standard Terms here, *Baricuatro* offers no support for her argument.

The Standard Terms expressly require that claims arising from the employment be arbitrated in the Philippines. The POEA Contract and the Standard Terms signed by Perez on April 7, 2010, fulfill the "agreement in writing" requirement. Therefore, the Convention requires that courts enforce an agreement to arbitrate unless the agreement is "null and void, inoperative or incapable of being performed." *Bautista*, 396 F.3d at 1301 (quoting Convention, art. II(3)).

---

[7] The timing of this disclosure is of no moment because "[t]he agreement-in-writing prerequisite does not specify when a party seeking arbitration must provide the court with the agreement in writing." *Bautista*, 396 F.3d at 1301.

## B. The Federal Arbitration Act Does Not Bar Arbitration

Perez argues that the Court should refuse to enforce this arbitration agreement because Section 1 of the Federal Arbitration Act, title 9 U.S.C. section 1, bars arbitration agreements in seamen's contracts. (DE 16 at 17). As Perez admits, however, the Court in *Bautista* considered and rejected this argument. (DE 16 at 17); *Bautista*, 396 F.3d at 1296.

Title 9 U.S.C. section 1 states, in relevant part: "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." But the application of this section to arbitration agreements under the Convention is limited by title 9 U.S.C. section 208, which states: "Chapter 1 applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the Convention as ratified by the United States." The Eleventh Circuit has interpreted this provision to mean that the limitation on arbitration agreements in the contracts of seamen in title 9 U.S.C. section 1 does not apply to contracts governed by the Convention. *See Bautista*, 396 at 1296. Therefore, the Court rejects Perez's FAA argument.

## C. Public Policy Is Not A Valid Defense At The Arbitration-Enforcement Stage

Perez also argues that the arbitration agreement is void as against public policy because it prospectively waives her right to seek U.S. statutory remedies. (DE 16 at 19). This argument was foreclosed by the Eleventh Circuit in *Lindo v. NCL (Bahamas) Ltd.*, 652 F.3d 1257 (11th Cir. 2011), when it limited the availability of the public policy defense to the award-enforcement stage. *See id.* at 1263. Perez contends that *Lindo* conflicts with both *Am. Express Co. v. Italian Colors Rest.*, 133 S.Ct. 2304 (2013), and

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614 (1985). (DE 16 at 21). However, the Eleventh Circuit recently rejected Perez's interpretation of *Italian Colors* in *Vera v. Cruise Ships Catering & Servs. Int'l, N.V.*, Case No. 14-12494, 2014 WL 6790710, at *4 (11th Cir. Dec. 3, 2014) ("Because *Italian Colors* does not conflict with our decision in *Lindo*, and because we determined in *Lindo* that the decision announced there was consistent with *Mitsubishi Motors*, we likewise conclude that *Lindo* remains good law."). Thus, Perez cannot raise the public policy defense at this stage. *Vera*, 2014 WL 6790710 at *7.

## D. Improper Forum Or Forum Non Conveniens

A motion to dismiss for improper venue is not the correct means to achieve Royal's arbitration objective.[8] *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Texas*, 134 S. Ct. 568, 580 (2013). Rule 12(b)(3) allows a party to move to dismiss a case for "improper venue." In *Atl. Marine*, the Supreme Court held that enforcement of a forum-selection clause that points to a foreign forum is properly brought through a motion to dismiss for *forum non conveniens*. *Atl. Marine*, 134 at 580; *Pappas v. Kerzner Int'l Bahamas Ltd.*, 585 F. App'x 962, 964 (11th Cir. 2014). Accordingly, Royal's motion to dismiss for improper venue is **DENIED**.

## III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant Royal Caribbean Cruises Ltd.'s Motion to Compel Arbitration (DE 8) is **GRANTED**. Because Perez's claims will be arbitrated and not litigated in this Court,

---

[8] No Party raised this procedural point and, save for passing references to dismissal, both Parties focused their arguments on the motion to compel arbitration.

this case is **CLOSED** and all other pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in chambers in Miami, Florida, this 18th day of February, 2015.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE